Good morning, Your Honor. Dan Chapman, appearing pro se, and also representing the interests of Mr. Flanagan and Mr. Jacoby, who could not be here today. Your Honor, the reason we're here today is that there were continuing misrepresentations by the United States Attorney's Office, representatives of the United States Attorney's Office of the District of Nevada, that really precluded both the trial court and, in effect, this Court, from granting us prevailing party status in the criminal case against us. The facts are detailed in my brief, and they show that the trial court erred by saying that the Eddy memo, and the Eddy memo, of course, was the memo that showed that the withholding of impeachment material, 652 pages of impeachment material, was actually intentionally withheld by the prosecutor. And it showed that the officers, the senior officers of the attorney of the U.S. Attorney's Office, knew of this. They knew it was intentional. But they went into this Court and into the trial court, and they made representations that it was unintentional. Now, Dixon is the case that controls in this circuit, Dixon v. Commissioner of Internal Revenue. And according to Dixon, if the fraud was committed by officers of the court, and clearly these individuals were officers of the court, then that's fraud on the court. And if there is fraud on the court, this Court has the ability, has the authority to vacate a ruling based on that fraudulent action. But in a situation where it harms the integrity of the judicial process, by keeping and, in this case, they kept relevant facts, relevant facts from this Court, then Dixon says this Court should act to vacate that ruling. And in fact, to give me a forum in which to carry my high burden, which is basically to show that the criminal case was completely without merit. Now, the government knew all along the withholding was intentional. But they told you that the – they tell you now the documents weren't even withheld, which is – clearly they were withheld. The previous panel in this circuit called that withholding, you know, prosecutorial misconduct in its highest form. These documents were withheld. They say that it was only a disagreement between prosecutors. That's what the Eddy memo allegedly shows, just a disagreement between prosecutors. These are constitutional obligations of the prosecutor's office. They're under court order to disclose these documents before trial, 30 days before trial. They're not allowed to disagree with this. They have no authority to disagree with the Constitution or with a court order. They say it was simply an oversight on the prosecutor's part. This was a premeditated plan. These documents were supposed to be turned over 30 days prior to trial. They weren't even ordered until the trial had already begun. And the continuing misrepresentations by the officers, by senior officers of the U.S. Attorney's Office is just a cover-up. It's nothing more than a cover-up of the prosecutor's actions. The trial judge erred by saying that the memo, the Eddy memo, did not show that the case was frivolous, vexatious, or in bad faith. Those are elements of the Hyde action. The Eddy memo does not have to show that it was frivolous, vexatious, or in bad faith. I have to show that, but only if I'm given a form in which to do so. Kagan. But didn't you already have that form? No, we didn't. We had a – the trial judge never made a ruling that the case was not vexatious, frivolous, or in bad faith, despite what the government has continued to say. There is nothing in the record. In fact, the trial judge's statements in the original Hyde motion before the Court, he just said that given the fact that the case was dismissed with prejudice, he could not make a determination that the trial was in bad faith or frivolous or vexatious. That's not the standard under Hyde. Under Hyde, it's the entire prosecution from start to finish. Now, I can detail, as I've detailed in the original Hyde motion, numerous instances of perjury before the grand jury by the IRS investigator, Michael Payne, numerous instances. Not even a question as to whether they're perjury or not. They clearly are, based on the government's own evidence. None of my own evidence is being put in here. Everything is based on the government's evidence. So the trial judge never made such a ruling, never said the entire case was not vexatious, frivolous, or in bad faith. But the government has maintained that that ruling was made. The government even tried to put that into the proposed order that in the district court, they tried to put in a proposed order that said the judge had made these findings. I opposed that order. The judge signed a simple order saying simply denied. Okay. He never made such a finding. And the Eddy memo is really relevant only to one issue, and it's really the only issue before this Court right now, and that is whether the misrepresentations by the government, by the prosecutor, and by senior officers all the way up to the And told this Court that the withholding of the documents were simply unintentional, whether that constitutes fraud on the Court. I believe it does, and I believe Dixon and the other precedential cases would hold that as being fraud on the Court. So would you address the prevailing party issue? Would I address the prevailing party? Yes. I believe that the trial judge, when he dismissed the case, he said that in two and a half weeks of trial, we've heard no evidence against the three individuals, the three defendants, none. The fact that the case was dismissed without prejudice or, I'm sorry, with prejudice, yes, it was a sanction for the government withholding or for the prosecutor withholding those documents. No question about that. That was clear. The Ninth Circuit's opinion, footnote 6, refers to the fact that if the documents were withheld intentionally, if this was an intentional act on the part of the prosecutor and it was done for the purpose of bolstering the prosecution's case, then it's possible that we could still be prevailing parties, even though there was not a judgment on the merits. Okay. I believe that this was done as a means to bolster the prosecution's case. And I detailed in the brief some additional facts that came out late in the trial and then, but were never, in some sense, were never disclosed to the trial judge. That detailed that this was exculpatory evidence that was being hidden. Now, was the withholding of the documents and the disclosure of the documents done intentionally to prevent that exculpatory material from coming before the court? I don't know. However, had we known that the withholding was intentional, we would have brought that up before the trial court at that time and asked for a judgment of acquittal based on the fact that this was exculpatory material that completely, completely ruined the, or went against the prosecution's case. The prosecution's case, recall, was that we had created box jobs and we had possession of the stock certificates and stock powers, and they said that possession, in that sense, equaled control for purposes of a box job, even though the other elements of box job didn't even exist in the case. There was no trading of the stock and there was no manipulation of the stock. And the government's only witness before the grand jury testified that there was no manipulation of the stock. But they went with this theory that possession equals control. Now, had they gotten a mistrial and been able to redo the trial, what they would have done is say that the person who actually did possess the documents was part of a conspiracy with us. Okay? They never made that argument. Their argument before the trial court, before the jury, was that I possessed the documents. Okay? Now, that is an element of prejudice, but that also goes to, had we known that this was intentional, we would have taken a different tact at that time and been able to say, look, they withheld this intentionally and now they disclosed it. Why did they do that? To try to goad us into asking for a mistrial or to try to goad the judge into declaring a mistrial. You recall, we asked for a dismissal. The prosecutor said, Your Honor, I reviewed Ninth Circuit cases last night while he was gathering up these 652 pages, and the cases are clear. Dismissal is not a proper remedy. There was no such case. There never was. He never produced it. They never could produce it in their brief. It didn't exist. This was just another cover-up, another misrepresentation to the Court that enabled them to hide the exculpatory evidence. Counsel, your time for opening has expired, but we'll give you some time for rebuttal.  Thank you. Thank you. Good morning, and may it please the Court. Robert Ellman for the United States. Your Honors, this is not an appeal from the denial of the Hyde claim. It's an appeal from the denial of the Rule 60B motion. So the inquiry is far narrower than the one being addressed by Mr. Chapman. The judgment in question is, of course, the denial of the Hyde claim, but it has become final. Relief under Rule 60B requires a showing of extraordinary circumstances by clear and convincing evidence. And what the defendant has to show in this context is that the Court's denial of this Hyde motion was corrupted, and typically it's under egregious circumstances, such as the introduction of fabricated evidence or bribery of a juror or some such thing. But what Mr. Chapman is describing today, respectfully, with the single exception of the Eddy memo, is all information that was before the District Court prior to the dismissal of the case. The inquiry should only focus on the Eddy memo because that's the only basis upon which the Rule 60B motion was made. But the Eddy memo, as the Court expressly found, merely reinforced its prior decision to deny the Hyde claim. So far from corrupting it, it reinforced it. In fact, what Judge Mahan said was that the Eddy memo added nothing new. And I've quoted in the brief at page 17 these statements by the Court. You'll find them in the excerpts at pages 115 and 126. The unfortunate fact is that prior to the dismissal and prior to the denial of the Hyde claim, the District Court had already found that the prosecutors had affirmatively misrepresented the disclosures they made in this case. But the Eddy memo adds nothing to that. In the end, what this Court stated in the Chapman opinion at page 1089 was that nothing about the dismissal was relevant to the defendant's guilt or innocence. Now, under a more exacting standard, we have to examine the Eddy memo and decide whether something in that implies that the defendants were innocent. And it doesn't. In fact, it doesn't even refer to any specific evidence or document. So again, as the Court has already stated, it merely reinforces the unfortunate finding that the Court made against us, which was affirmed by this Court. And I'd just like to correct a couple of statements. Judge Mahan did find that the case as a whole was not brought for frivolous or vexatious reasons or in bad faith. And I refer you to statements at pages 1088 and 1089 of the Chapman opinion and also page 1090 where the Court reiterates that finding. In fact, this Court stated in the opinion that because the defendants had not prevailed on the merits, it need not address the district court's finding that the case as a whole was not brought for frivolous or vexatious reasons. In the Dixon case, the Court found out after judgment had entered that the trial was, and I'm quoting now, a charade fraught with concealed motives, hidden payments, and false testimony. And what it revealed was what the Court called an unconscionable plan to improperly influence the Court in its decisions. Well, the misconduct on the part of the prosecutors was well known to the Court. It was the very reason the case was dismissed. The Eddy memo adds nothing to that. So unlike the case in Dixon, the problems in the government's case were revealed before the case was dismissed and before the Hyde claim motion was denied. And finally, Judge Mahan did state at one point prior to denying the Hyde claim that he had seen no evidence of the defendant's guilt. But that statement is inaccurate. And I refer you to the government's opening brief in the Chapman Hyde case. The case is 06-10610. And the brief lays out in great detail, in many pages, the evidence that was introduced against the defendant showing their... The government's position, Judge Mahan made his statement. Judge Mahan didn't make that statement. It's true. His argument. It's true. But again, Your Honor, all of that was known to the judge before he denied the Hyde claim. And it still wouldn't show that the case was not brought... That the case had been brought for vexatious reasons. Judge Fletcher, do you have any questions? No. Thank you, Your Honor. I simply think the government doesn't look very good in this instance. Unfortunately, it does not. I agree with you, Judge Fletcher. But again, those were issues that I think were well fleshed out before the court prior to the denial of the Hyde claim. Well, it's pretty obvious that Judge Mahan was struggling with this. He made some statements that he all but... He came very close to granting relief under the Hyde Amendment, I think. Knowing Judge Mahan and looking, perusing the transcript, he was speaking a bit out loud at points. But that was reflecting his struggle with it. He obviously thought the government had committed some pretty serious misconduct here. He did indeed, Your Honor. And this court affirmed him in that judgment. But I don't think he said that he nearly granted relief under the Hyde claim. I do think he... No, he didn't. But I'm just reading between the lines and knowing Judge Mahan that I think he came pretty close to granting relief. Probably weighed it pretty carefully. So it's a pretty close case. At least I think he considered it a close case. I know he didn't say that. I'm just reading between the lines. Well, Judge Mahan is the judge who dismissed the indictment and he did say there was nothing new here. And that's correct. He was well within his discretion in finding that. So the ruling should be affirmed. Thank you, Your Honor. Thank you. We'll give you two minutes. Thank you, Your Honor. Let me just clarify a couple of things that happened the last time we were here. There was no argument about concerning the Hyde motion before this Court. The entire argument was based on the dismissal, which was clearly a much more important issue at the time. But what's happened in this case, and it's been over and over again, is that there was a misrepresentation, a number of misrepresentations, by the prosecutor. There were misrepresentations before the grand jury as well. Yes. Can I ask you a question? Yes. The district court read the Eddy Memo as saying in what it called the Reader's Digest version, this hasn't been turned over, what are we going to do, question mark, and the AUSA, whose name I'm not going to try to pronounce, says, we'll handle it on direct. Is that an accurate characterization of the Eddy Memo? It's an accurate representation of, well, no, it's not. Because what happened with the two prosecutors, the prosecutor and the second chair, did have a disagreement. The second chair said, wait a minute, you've got all these documents. You've got attorneys over to their defense. And the prosecutor, Mr. Dam, said, no, I'm not going to. I'm going to save it for direct. The problem is, it's a nice theory. The problem is, over and over again, once we did get a hold of the 652 pages, which was at the end of the trial, what we found is witnesses who had come and gone and had police records, okay, or proffer agreements with the government, or 5K letters with the government, none of which was disclosed, and these people had already come and gone. So it's a nice theory. It doesn't hold up to any scrutiny. It's not what happened.  What happened was the opposite. What happened was exactly the opposite. But that's what the Eddy Memo said. The Eddy Memo says this was a plan from the beginning. Okay. It was intentional. Okay. And while the prosecutor's actions were bad enough, and ignoring your constitutional obligations, et cetera, et cetera, is bad enough, it's appalling, when the senior judge comes in and lies to this court, that's inexcusable. Without defending it, they were pretty bad at it. The district judge was quite clear that he did not find that this was unintentional. But he also said it was nonintentional. Well, he was thinking out loud, as the judge said at some points. But he said it's clearly not intentional. He said it's clearly not intentional.   He said it's clearly not intentional. He said it's clearly not innocent. Right. He was quite clear that this was misconduct. This circuit was quite clear in reviewing the record. This effort to paint it in a favorable light was pretty unsuccessful. It was successful enough where we were denied prevailing party status, however. Okay. And there is a lot of harm that comes along with that to me. Wasn't that based on whether or not the withheld evidence went to innocence or guilt as opposed to whether there was an intentional withholding? Well, the intentional withholding is what was mentioned in the opinion here. That's part of it. And I think that's an important part, because had we known at the time that this was intentional, had the prosecutor, for example, said, you know what, yeah, I withheld it, I was wrong, I screwed up, whatever, and admitted his actions, okay, that would have cast an entirely different light on the dismissal and the argument for it. Okay. So thank you, Your Honor. Thank you. The case I just heard will be submitted for decision. Thank you both for your arguments.
judges: Rosenthal, Fletcher B. , Thomas